Íudge Underwood
delivered the opinion of the Court;
These are cross writs of error, prose-ciitéd to reverse a decree of the circuit court. The following are the facts and points exhibited by the record: Oldham filed his bill in chancery, against Halléy-,'to compela specific execution of the following interest. “Know all men by these presents, that I John Halley, of Madison codnty, and state of Kentucky, for, and in consideration of two hundred and fifty five dollars, to me in hand, paid, have bargained and sold unto Richard Oldham, a certain parcel of land, containing seventy five acres, adjoining the lands deeded to said Oldham, on the waters of Stony run, on the north and west sides. But it is to be understood, if the said Halley, shall pay back to the said Oldham, two hundred and fifty five dollars, with interest, within twelve months from the date hereof, the land is to remain the property of the said Halley, otherwise, the said Halley is to make the said Oldham, a general warranty deed. Dated 7th March, 1821. Signed, John Halley, seal.”
The foregoing contract was attested by two witnesses,oneof whom, on the 15th of June, 1821, proved its execution, before the clerk of the Maidson county *114 court, and the other, on the 6th of August, 1821, fully proved it, and therefore, it was admitted to record in said clerk’s office, who, in his certificate, styles it a mortgage. The subpoena issued January 7, 1824, returnable to the February term, next ensuing, and is returned executed on the 6th of February. On the 18th day of June following, the bill was taken for confessed, and a decree rendered, requiring Falley to convey the land to Oldham, at the September term of the court, on the petition of Halley, the decree at June, was set aside, and his answer admitted. At the February term, 1827, a decree, interlocutory, was pronounced, requiring Halley to pay Oldham, $265, with interest from the date of the contract, together with the costs of the suit, oruwith good and sufficient security to replevy the same for two years in the clerk's office,” on or before the 1st day of the ensuing June term. In case he failed to do either, the decree proceeded to provide for the-sale of the land, or so much as might be necessary to pay the sum decreed, '¡•for ready money.” At the June term, 1827, it appearing, that Halley had failed to comply with the -interlocutory decree, the cuurt ordered the commissioner to proced with the sale, as required by the interlocutory decree. Halley assigns errors in both decrees, to-wit, that of June, 1824, and that of February, 1827, and Oldham in his assignment, insists that the court erred, in not decreeing a conveyance, in permitting the decree to be set aside, and in failing to decree a balance to him, in case the land when sold, should not pay the amount of this debt and interest.
Whether an instrument be a mortgage or a conditional sale, must be determined by the cir-stances of each particular case, and the sound discretion of the chancellor. The vendee or obligee, recording an ^^o/tgTge,'18 speaking "of it as such, & [great "on the money advanced by repaid on the day..stipule arec!r. cumstances to prove it, a mortgage, the"* money,
*114 The first question for consideration, and that upon which all others,in a great degree, depend, is the true nature of the contract, already set out. Is it a mortgage, or is it a sale upon condition? The solution of this question, when it occurs, depends upon the circumstances of each case, and the sound discretion of the court. Such is the rule laid down in Prather vs. Norfiat, I. Marshall, 178. As to the circumstances of this case, interest is recovered on the money, Oldham has the instrument proved and recorded as a mortgage, and he speaks of it as such, according to the proof. These are strong circumstances in favour of the construction, that it was merely intended to be a security. But then, the clause, stipulating to make a gen *115 eral warranty deed, if the money is not paid, seems to be incompatible with any thing but a sale. As to the facts which should regulate discretion, Halley charges in his answer, to which he requires a response from the complainant, that the instrument when executed, was intended by the parties to secure the amount therein stated, and not as a sale.. The complainant replies to-this by saying, “that he can convey no better idea of the contract, and his intention, and .Halley’s, than the writing itself conveys, This response is not satisfactory. To our minds, there is an equivocation in it. It is sticking to the letter of the contract. The object of Halley, was to test his conscience, and to require him to say, whether the land was not given as a security, for the money advanced, and whether he, Halley, did not.execute the contract, with that intent, and whether. Oldham himself, intended any more at that time. Oldham must have known from the conversation, and all. the facts connected with the arrangement, what wasim tended and meant, and he could have answered^ directly, without referring to the ambiguous face of. the instrument. His failing to do so, is evasive.. Oldham in his answer says, the money due him was. “good par money, gold or silver, and not paper money.” The proof is, that he laid.out and expended ‡255, in notes on the bank of Kentucky,for Halley., The answer of Oldham, only says, he docs not admit that he made any declarations about said writing, being, a mortgage. He does not deny the charge, and. the proof is satisfactory, if he denied it. Halley states the land to he worth four times the amount of, the sum due Oldham.
The property, ocnveyed by-f0„r times the amount a strong err-cumstanoe to i^g^rnort'5 gagei
On this subject, Oldham in his answer, is silent. It is a little remarkable, that he did not speak of the price, as a full and fair one, if it had been so, when he was endeavoring to make the contract a fair purchase on his part. This is a circumstance from which the inference is not idle, that the- land was given as a security, or that the complainant has been grasping-ata most unconscientious bargain. From all which, we think the complainant ought not to be tolerated in his attempt to coerce the title, absolutely, by a specific execution, of what he considers to be the contract. *116 We shall take it to be what he considered it, when he had it recorded a mortgage, and we shall regard this stipulation, for a deed with warranty in this case, as no more than an engagement, inserted by way of penalty, and amounting only to what would have been the result, in case a formal mortgage had be@n cxer cuted,and the money not paid, at the day, to-wit: a vestiture of the absolute title, in legal contemplation, but yet subject to the equity of redemption. Under this view of the contract, it follows, that the decree of the 18th of June, 1824, should be set aside.
On a bill for specific conveyance of a tract of land, with a prayer for general relief, and the instrument sought to be specifically enforced, turns out to be a mere mortgage or security for money advanced ; although the court cannot grant the conveyance it should not dismiss the bill, but should decree complainant, his money and interest.
The bill was filed to obtain a conveyance of the title, and it contains a prayer for general relief. As the court ought to have refused granting the specific relief sought, it is contended by counsel, that the bill should have been dismissed. That is not our opinion, There is no reasons for multiplying actions. The chancellor could as well give Oaham what he w'as entitled to in this suit, as to require him to bring another. He asked for a particular thing, or if be could not get that, then he asked for whatever the court might think him entitled to. Such is the nature of the bill, and we think it was proper to secure him his money and interest. It is unnecessary to notice the errors assigned, questioning the propriety of setting aside the d ecree of J une, 1824, and admitting Halley’s answer. Whether these proceedings were correct or not, is immaterial, as we are of opinion, that the decree was unauthorized, from the nature of the contract, and the facts which appeared at the time it was rendered. We shall only say, that if that decree was final, the court had no power to set it aside. If interlocutory, it was properly opened.
The decree rendered at the February term, 1827, is also erroneous in two respects.
1st. In that part which provides for replevying the debt.
And 2d. In that part which directs a sale for ready jponey. The court should have directed Halley to pay the money and interest, and given day for payment. If be failed, a sale of the land should have been ordered. At the date of the contract, there was no act of assembly, expressly regulating *117 ihe credit upon which mortgaged property should be sold, when a sale was decreed by the chancellor, or requiring that it should be sold on any credit.
No statute regulating o;i property, shall be sold, nalogousto that allowed °n sales unr if the credit be allowed on Slvins dayfor objection to order sale for c«s?i-
Bill to foreclose, prema-thenm, or interlocutory tiv^to’safíoí the land'. ln-terlocutory payment by q, given day, & ¿g^jj^antof the consequences, of failure,
In the absence of any such act, we think the pro-ceedingsof the chancellor should in the general, be regulated, by analogy to sales made under executions. This would have required a credit of two years, to be given for payment, or a sale upon two years credit, if the laws in force, applicable to the contract, at its date, should govern. We are of opinion, that a longer credit ought not to have been allowed; had it been provided for by subsequent legislation, because of the retroactive effect of such subsequent law, ope■rating so as to impair the obligation of the contract, But laws, enacted since the contract which give a more speedy remedy, do not impair the obligation of the contract, or the contract itself; and hence, Old-ham cannot complain of such acts. Nor can Halley, because they only compel him to do, in the fulfilment of his contract, what morality and conscience require of him, and what he ought to have done, without any Jaw at all.
By an act of the 24th January, 1827, passed before the final order for a sale was rendered, credit in such cases was restricted to three months, and in our opinion, it would have been most proper to have proceeded in conformity to this act, which is now repeal-pd. The general law, now, requires land to be sold on a credit of three months. This should now govern the discretion of the chancellor, if he orders the sale on creditat all; but where the credit is allowed, in giving day for payment, we see nothing objectionable in the practice, under existing laws, to order the sale for cash in hand It was premature in the interlocutory decree, to give directions about the sale. All that the interlocutory decree should do, is to to direct the payment of the money, by a given day, and apprise the defendant of theconsequences of his failure; Downing, &c. vs Palmeteer, I. Marsh. 66. If the money is paid, there is an end of the controversy, and the court has nothing to do,but dismiss the parties, and order a recon-veyance of the title, if necessary, if the money is not paid, then the sale should be ordered, and the teyms prescribed. It seems to us, that had the pro *118 ceedings been regular, a sale should have been' directed on a credit of three months. But as the proceedings have been irregular and erroneous therefore, the decree rendered at- the June term, 1824, of the Madison circuit court, is hereby reversed, and set aside. The interlocutory decree rendered at the February term, 1827, of said court, and the final decree or order taken thereon, rendered at the June term, 1827, are likewise reversed and set aside, and the cause is remanded for proceedings not inconsistent with this opinion.
Bréele, for Oldham; Turner, for Hailey.
Each party having cause for reversal, each must recover of the other, the costs of prosecuting his writ»